**BRITT, Stephen J., Appellant,**

v.

**NAVAL INVESTIGATIVE SERVICE.**

No. 88–1710.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
July 14, 1989.

Decided Sept. 14, 1989.

---

Stephen J. Britt, Norristown, Pa., pro se.

Lainie J. Simon, U.S. Dept. of Justice, Civ. Div., Washington, D.C., David F. McComb, Asst. U.S. Atty., Philadelphia, Pa., for appellee, Naval Investigative Service.

Before GIBBONS, Chief Judge, and HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal requires that we interpret the extent to which the "routine use" exception in the Privacy Act, 5 U.S.C. § 552a (1982), permits a federal agency to divulge investigatory information about an individual to his employer.

### I.

#### *Background*

In 1985 Stephen Britt was a Special Agent for the Immigration and Naturalization Service (INS), where he conducted investigations which resulted in administrative and criminal prosecutions. In addition, Britt was a major in the Marine Corps Reserves, where he performed as a communications officer.

In March 1985, the home of gunnery sergeant Steven Reinert, who was a subordinate of Britt's in the Reserves, was searched pursuant to a warrant executed by the Camden County (N.J.) Sheriff's Department and the federal Bureau of Alcohol, Tobacco and Firearms. They found various items of military ordnance (e.g., flares, blank ammunition, smoke grenades) and requisition forms bearing the signatures of Reinert and Britt. Britt appeared at Reinert's arraignment and advised the court that the ordnance was lawfully requi-

sitioned, although improperly stored in Reinert's basement.

After a preliminary determination that Britt did not have the authority to requisition ordnance, the Naval Investigative Service (NIS), largely through the efforts of Agent James Simprini, commenced an investigation of Britt. During the pendency of the investigation, Simprini contacted Britt's superior at the INS, Lyle Karn, and subsequently met with Karn in late June 1985 and "told him what [the] investigation had disclosed so far." App. at 37. Karn requested photocopies of all NIS reports in the case *Id.* On or about June 30, 1985 Simprini, with the approval of his immediate superior, the deputy regional director of NIS, provided Karn with copies of "all related reports of investigation to date." App. at 40. These reports include accounts of persons interviewed, results of the execution of any searches, and a record of all physical evidence seized. A few days after releasing the investigation reports to the INS, Simprini requested that INS "hold any administrative action against Britt in abeyance pending completion of NIS investigation and subsequent judicial proceedings." App. at 39.

The NIS investigation of Britt was concluded in late 1985. No charges were brought against Britt and no disciplinary action was taken by the Marines. Indeed, Britt's name was submitted in April 1987 for promotion to Lieutenant Colonel, and he has since been promoted.

In February 1986 Britt filed suit against Simprini, Walter Moss (another NIS agent who allegedly assisted Simprini) and the NIS. He alleged that the NIS improperly released information about its investigation to his commanding officer and to his INS employer, and that the NIS investigation was in retaliation for his assistance to Reinert in asserting his constitutional rights. Britt sought damages and injunctive relief from the NIS under the Privacy Act and damages from the individual defendants for violation of his due process rights.

On July 10, 1987 the district court dismissed the claim against the individual defendants, and Britt does not challenge that ruling. Thereafter NIS filed a motion for summary judgment which the district court granted. Britt timely filed this *pro se* appeal.

## II.

### *The Privacy Act*

The Privacy Act, 5 U.S.C. § 552a, governs the control by government agencies of information about citizens of the United States or permanent residents, including information concerning one's education, financial transactions, medical history, criminal record, and employment history. 5 U.S.C. § 552a(a)(2), (4). In addition to establishing certain requirements relating to the collection and maintenance of such records, *see* 5 U.S.C. § 552a(e), and the publication of notice of the existence of such records, *see* 5 U.S.C. § 552a(e)(4), the Act limits an agency's authority to disclose information in its records to other individuals or other agencies without the permission of the person to whom the record pertains, *see* 5 U.S.C. § 552a(b).

The provisions of the Privacy Act applicable to the disclosure of information provide in pertinent part:

(b) *Conditions of disclosure*

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

. . . .

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

. . . .

5 U.S.C. § 552a(b)(1), (3). Of the eleven statutory exceptions to the prohibition of disclosure of personal information, the two

set forth above and relevant here are referred to as the "need to know" exception, § 552a(b)(1), and the "routine use" exception, § 552a(b)(3).

A "routine use" is defined in section 552a(a)(7) as "the use of such record for a purpose which is compatible with the purpose for which it was collected." Moreover, a disclosure cannot be authorized under the routine use exception unless the disclosing agency publishes annually in the Federal Register a notice describing "each routine use of the records contained in the system, including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D).

## III.

### Discussion

In granting summary judgment in favor of the government on Britt's claim against the NIS, the district court ruled that the disclosure by the NIS to Karn fell within both the need to know exception, § 552a(b)(1), and the routine use exception, § 552a(b)(3). Britt challenges both grounds for justifying the disclosure to INS.

### A.

### The Need to Know Exception

The district court stated that "Karn, as Britt's employer would need to know of possible criminal activity by one of his own criminal investigators to evaluate the employee's continued suitability for employment, fitness for certain positions, and to determine whether access to sensitive information and/or equipment should be restricted." App. at 59. However, the section refers only to disclosure of the record "to those officers and employers of the agency which maintains the record...." See 5 U.S.C. § 552a(b)(1). Thus it is apparent that the need to know exception applies only to intra-agency disclosures. Because Karn was not an officer and employee of NIS, NIS' communication to him cannot be covered by the need to know exception. The government concedes that the district

court's opinion cannot be sustained on this basis. Appellee's brief at 10 n. 8.

### B.

### The Routine Use Exception

In finding that NIS' disclosure to Karn also fell within the routine use exception, the district court held that the NIS satisfied both the publication, § 552a(e)(4)(D), and the compatibility, § 552a(a)(7), requirements of the exception. The district court stated that the disclosure "falls within the plain language of published routine uses and is compatible with the purposes of the investigation." App. at 59. Britt argues that the NIS failed to meet both requirements under the routine use exception of § 552a(b)(3). Turning initially to the requirement of publication in the Federal Register, we are first confronted with the obscurity of a portion of the NIS' published list of routine uses. The statute permits collection, maintenance and disclosure of records only when the agency publishes notice of "the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D).

Pursuant to the publication requirement of section 552a(e)(4)(D), the NIS published the following in the Federal Register:

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

. . . .

To other investigative units (federal, state or local) for whom the investigation was conducted, or who are engaged in criminal investigative and intelligence activities; federal regulatory agencies with investigative units.

. . . .

The Blanket Routine Uses that appear at the beginning of the Department of the Navy's compilation also apply to this system.

50 Federal Register 22,802–03 (May 29, 1985).

The clear statement that NIS may disclose material "[t]o other investigative units (federal, state or local) for whom the

investigation was conducted, or who are engaged in criminal investigative and intelligence activities ..." adequately gives notice of the categories of users and the purpose. The government, however, relies on the phrase appearing immediately thereafter, which is preceded by a semicolon: "federal regulatory agencies with investigative units." This phrase contains no statement of the "purpose of such use," as required by section 552a(e)(4)(D). We share Britt's concern that the breadth of the clause relied on does not provide adequate notice to individuals as to what information concerning them will be released and the purposes of such release.

The legislative history demonstrates that Congress intended that there be meaningful public notice. The Senate Report states:

> [T]he public notice function and the exercise of rights which it serves are to be meaningful.... Congress has received complaints about the difficulty which organizations and individuals have in keeping track of the scattered, *obscurely-worded* public notices filed by agencies which may affect privacy and civil liberties.

S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Admin. News* 6916, 6973 (emphasis added). It was Congress' intent that the routine use exception "should serve as a caution to agencies to think out in advance what uses it (sic) will make of information." *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, re-printed in* 120 Cong.Rec. 40,405, 40,406 (1974). Because it is difficult to envision an agency that does not have some investigative unit, one could only conclude from the NIS' published notice that the NIS might disclose any information it possessed to virtually any agency in the executive branch. Such breadth fails to constrain in a meaningful manner the NIS' discretion to disclose information.

The government suggests that whatever limitation is to be imposed would be effected via the "compatibility" requirement. Congress, however, chose to impose two discrete limitations, one via the compatibility provision and the other through the requirement of publication of "routine uses." The government's argument would denude the latter of whatever effect it may have.[1]

█ Notwithstanding the problems with the publication in the Federal Register, we choose to focus our attention, and rest our holding, on what we deem the more basic issue: whether the disclosure in this case satisfied the statutory requirement that the disclosure of the record be "for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The government unaccountably seeks to expand what is clear statutory language by arguing that "disclosure need only be compatible with [the routine use] purpose" published in the Federal Register. Appellee's brief at 17. The statutory requirement of compatibility, however, requires instead a dual inquiry into the purpose for the collection of the record in the specific case and the purpose of the

---

1. The government also contends that the release of copies of the investigative reports to Karn after his request for them is covered by one of the Blanket Routine Uses it published, which states that

> [a] record ... may be disclosed to a federal agency, in response to its request, in connection with the hiring or retention of an employee, the issuance of a security clearance, [or] the reporting of an investigation of an employee ... to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

50 Fed.Reg. 22,734 (May 29, 1985).

Even if the release of the written report to Karn fell within this Routine Use, it would not protect the earlier oral notice to Karn by Agent Simprini of the investigation of Britt. Moreover, since a request for more detailed, written information will almost automatically follow such oral disclosure of an investigation, we must focus on whether the initial disclosure satisfies the requirement of section 552a(e)(4)(D). In addition, the Privacy Act contains a specific exception permitting agencies to disclose information upon the request of another agency, but only if the request is in writing from the head of the requesting agency and the information requested is for use in civil or criminal law enforcement activity. *See* 5 U.S.C. § 552a(b)(7). It is unlikely that the NIS can, through its publication of Blanket Routine Uses, avoid the restrictions of section 552a(b)(7), which were not met in this case.

disclosure. We believe that the language that Congress used must govern.

Turning first to the purpose for the collection, the government points to the NIS' published list of reasons for gathering information which includes the following statement: "The records in this system are used to make determinations of; [sic] suitability for access or continued access to classified information, suitability for employment or assignment ...; use in current law enforcement investigation of any type...." 50 Fed.Reg. 22,802 (May 29, 1985). The government contends that because Britt had a sensitive position with the INS, NIS' disclosure to INS was "consistent with any of the listed routine uses, ... particularly those that relate to the integrity of investigations or the status of an investigative agent." Appellee's brief at 16. The government's analysis, however, fails to focus on the case-specific purpose for the collection by NIS of the material about Britt, as revealed by the affidavits it supplied in support of its motion for summary judgment.

Simprini's affidavit states that after inquiry by the Sheriff's office "for confirmation of the military affiliation of Reinert and Britt and whether they in fact had authority to requisition and hold this ordnance," and after learning that neither was authorized to requisition ordnance, Britt's Commanding Officer "then requested further investigative efforts to determine whether disciplinary action against either Marine was indicated." App. at 37. He also states that, "[t]he NIS Reports of Investigative [sic] ... is used by military and civilian prosecutors to decide whether sufficient evidence is present to proceed with a criminal prosecution." *Id.* at 38.

Likewise, the affidavit of J. Brian McKee, Director of the NIS, states that the purpose for which NIS reports of criminal investigations are provided to the Commanding Officer (CO) is to allow "the CO

... to take a wide variety of personnel or administrative actions," even if he decides not to initiate a criminal investigation.[2] App. at 41. Based on these affidavits, it is undisputed that the investigation was for a specific instance of possible wrongdoing rather than for a general inquiry into Britt's background.

Turning next to the purpose of the disclosure as shown by the record, Simprini's affidavit states that his reasons for disclosing the pending ordnance investigation to the INS were that he "was sure that the INS would want to have this information at the earliest possible opportunity" and that his immediate superior and the NIS Inspector General recommended that he conduct the briefing personally rather than just send the packet of materials. App. at 38. Similarly, McKee's affidavit states that he thought that "it was incumbent" upon Simprini to notify the INS that Britt was the subject of an NIS investigation. App. at 42.

There is nothing in the record suggesting that the INS was conducting its own criminal investigation of the same activity or any other activity by Britt for that matter, and the government does not seek to justify disclosure on any such ground. Instead, the government argues simply that the information "could have had a bearing on [Britt's] specific job" with the INS. Appellee's brief at 15. In other words, the NIS released the information to Karn because it believed that Karn might find it relevant to have information suggesting a lack of integrity in his subordinate.

Relevance, however, is not the standard Congress placed in section 552a(a)(7). Congress limited interagency disclosures to more restrictive circumstances. There must be a more concrete relationship or similarity, some meaningful degree of convergence, between the disclosing agency's purpose in gathering the information and

---

2. The disclosure to the CO is no longer challenged and, in any event, such disclosure would appear to fall within the "right to know" provision governing intra-agency transmission of information, *see* 5 U.S.C. § 552a(b)(1), since the Reserves might need to reevaluate Britt's access to sensitive information or the level of responsibility he was accorded. *See, e.g., Daly–Murphy v. Winston,* 837 F.2d 348, 354–55 (9th Cir.1987); *Hernandez v. Alexander,* 671 F.2d 402, 410 (10th Cir.1982).

in its disclosure. *See Covert v. Harrington,* 876 F.2d 751, 755 (9th Cir.1989) (information collected for security clearance purposes is incompatible with disclosure for criminal investigation of subsequent actions) (dictum); *Mazaleski v. Treusdell,* 562 F.2d 701, 713 n. 31 (D.C.Cir.1977) (derogatory information concerning a federal employee's dismissal not compatible with disclosure to prospective employer) (dictum); *see also* S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Admin.News* 6916, 6983 (statute designed to "prevent[ ] an agency from merely citing a notice of intended 'use' as a routine and easy means of justifying transfer or release of information"). We conclude therefore that NIS' use of the information compiled as to Britt, which was merely a preliminary investigation with no inculpatory findings, by disclosing it to Britt's civilian employer (albeit a government agency) was not compatible with the purpose "for which the information was collected." [3]

We believe that to hold otherwise would frustrate the congressional purpose behind the Privacy Act. One of the goals of the Act was to prevent the federal government from maintaining in one place so much information about a person that that person could no longer maintain a realistic sense of privacy. The Senate Report stated that "the creation of formal or de facto national data banks, or of centralized Federal information systems without certain statutory guarantees would ... threaten the observance of the values of privacy and confidentiality in the administrative process." S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Admin.News* 6916, 6930; *see also* The Privacy Act of 1974, Pub.L. No. 93–579, § 2(a), 88 Stat. 1897 (Congressional Findings and Statement of Purpose). As Senator Percy, one of the Privacy Act's cosponsors, stated, "[w]hen personal data collect-

ed by one organization for a stated purpose is used and traded by another organization for a completely unrelated purpose, individual rights could be seriously threatened." 120 Cong.Rec. 36,894 (1974), *reprinted in Ash v. United States,* 608 F.2d 178, 180 (5th Cir.), *cert. denied,* 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980).

In order to address these concerns, the compatibility requirement of 5 U.S.C. § 552a(a)(7) limits interagency exchange of information. As the report on the final bill states, the requirement is "intended to discourage the unnecessary exchange of information to another person or to agencies who may not be as sensitive to the collecting agency's reasons for using and interpreting the material." *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in* 120 Cong.Rec. 40,405, 40,406 (1974). However, if the numerous government agencies which collect information about individuals are free to share their information with others, bound only by the standard of relevance to the recipient agency, the purpose of the limitation in 5 U.S.C. § 552a(a)(7) may be nullified. For the same reason the agency cannot, by the mere publication of broad routine use purposes, evade the statutory requirement that disclosure must be compatible with the purpose for which the material was collected. We hold therefore that the district court erred in granting summary judgment for the government.

## IV.

### Damages Under the Privacy Act

■ Our holding above does not mean that Britt is necessarily entitled to prevail. The Privacy Act permits a civil action against an agency for its unprotected disclosures which have an adverse effect on an individual. 5 U.S.C. § 552a(g)(1)(D).

---

**3.** The cases cited by the government which have upheld disclosures as within the routine use exception are not helpful since they do not focus on the compatibility requirement. They are illustrative, however, of instances in which disclosure was compatible with the purpose for which the information was collected. For example, in *United States v. Miller,* 643 F.2d 713 (10th Cir.1981), where a criminal defendant challenged the disclosure of material, which he voluntarily released to his parole officer, to the FBI or to postal inspectors, the court stated that the release of records "to further a criminal investigation" qualifies as a routine use. *Id.* at 715.

However, the statute permits a plaintiff to recover damages only when the agency "acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4).

The legislative history points out that the "intentional or willful" standard is viewed as "somewhat greater than gross negligence." *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act*, reprinted in 120 Cong.Rec. 40,405, 40,406 (1974), quoted in *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C.Cir.1987). The standard has been construed as one that requires that the agency "commit[ ] the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Albright v. United States*, 732 F.2d 181, 189 (D.C.Cir. 1984) (footnote omitted).

The district court declared summarily that "plaintiff has not come forward with any evidence that would support an inference of willful or intentional disregard of the Privacy Act by the defendant, the NIS." App. at 60. The district court may have been influenced by its belief that the NIS had not violated the law at all. In light of our holding that the NIS did, in fact, violate the Privacy Act, we believe it appropriate to remand this case to the district court for reconsideration of this issue.

We note that Britt complains that he has been denied discovery of NIS or INS officials. Appellant's brief at 22 n. 5. Because most of the evidence relating to this issue is likely to be exclusively in the possession of the government, it would seem appropriate to accord him the discovery necessary to this issue.

## V.

### Conclusion

For the reasons set forth above, we will reverse the district court's grant of summary judgment for the NIS and remand for further proceedings consistent with this opinion.