NYGAARD, Circuit Judge, dissenting.
While I agree with most of the conclusions reached by the majority, because I believe that the disclosure' of the contents of these records was pursuant to a “routine use,” I respectfully dissent.
I.
The Privacy Act states that records are not protected from disclosure if the disclosure is pursuant to a “routine use.” 5 U.S.C. § 552a(b)(3). A routine use is defined as “the use of such record for a purpose which is compatible with the purpose for which it was collected.” 5 U.S.C. § 552a(a)(7). In addition, the Privacy Act states that the agencies must publish a notice each year in the Federal Register indicating the routine uses for which protected records may be used. 5 U.S.C. § 552a(e)(4). This information must include “the categories of users and the purpose of such use.” 5 U.S.C. § 552a(e)(4)(D).
In compliance with the Privacy Act, the DOD published in the Federal Register, “blanket routine uses” which are applicable to every record system maintained by its various branches, including the army.
One of these provisions entitled “Routine Use — Law Enforcement,” states:
In the event that a system of records maintained by this component to carry out its functions indicates a violation or potential violation of law ... the relevant records in the system of records may be referred, as a routine use, to the appropriate agency, whether federal, state, local, or foreign, charged with the responsibility of investigating or prosecuting such violation [.]
Fed.Reg., May 29, 1985. (emphasis added.)
In addition, the DOD published the following in the Federal Register:
Information is furnished to the criminal justice elements outside the Department of Defense for investigation and prosecution when such cases fall within their jurisdiction or concurrent jurisdiction is applicable. These include ... state and local law enforcement ... [and] midlife conservation ... agencies[.]
50 Fed.Reg. 22,161, May 29, 1985. (emphasis added.)
A.
These routine uses fairly cover the facts of this case. The disclosure of the hunting roster information was for use by the Pennsylvania Game Commission’s wildlife conservation officers to investigate possible violations of state hunting laws. This was precisely the type of “state law enforcement” the regulations covered.
Our decision in Britt v. Naval Investigation Service, 886 F.2d 544 (3d Cir.1989) supports the conclusion that the roster information was disclosed for a proper routine use. In Britt we emphasized that the Privacy Act’s definition of routine use was the use of such record “for a purpose' which is compatible with the purpose for which it was collected.” We said this definition required us to make a dual inquiry into (1) the purpose for the collection and *139 the specific case, and (2) the purpose of the disclosure. Britt, 886 F.2d at 549. Here, one of the main purposes for the collection of the information on the hunting roster was to monitor hunting in order to prevent unlawful overkilling of deer. The disclosure was made to help PGC find out if appellants were trying to hunt deer lawfully. I conclude that the disclosure was made for the reason for which the record was collected, and Britt’s routine use test is satisfied.
B.
The disclosure of Merritt’s time card information to PGC investigator Clark creates a tougher question. If based solely on the Federal Register routine use regulations, we would be able to conclude easily that the disclosure was proper. Here, as the regulations require, “a system of records ... indicate[d] a violation” and it was for this reason that “the relevant records were referred ... to the appropriate [state] agency” responsible for the investigation.
The problem arises from Britt’s holding — and, indeed, from the language of the Privacy Act itself; that the disclosure of the records must be for a use that is compatible with the original purpose for which the records were collected. In general, the main reason time cards are collected is to determine employees’ work hours in order to compute payroll. It is not to collect information about an employee which can be used against him in a criminal investigation.
Nonetheless, the main purpose for which time cards are collected certainly is not the only purpose. One of the reasons time card information is collected is to find out if an employee was at work on a given day — the precise reason for which it was used in this case. LEAD disclosed information on Merritt’s time card precisely for this purpose.
In addition, work schedule information about an employee typically would be useful for investigations that require knowing the employee’s whereabouts on the day the employee claimed to be not working. If an investigator legitimately suspects an employee may have tried to deceive the government about not being at work on a given day, the government would disclose time card information that would help determine whether indeed the employee lied. Hence, even if the time record was not specifically collected for crime prevention or investigation, I believe it is available as evidence in a legitimate criminal investigation, because the disclosure is being made for a reason compatible with that for which it was originally collected — as evidence of whether and when she worked. To hold otherwise could potentially bar valuable federal agency information or facts about a person from being used as evidence by non-agency criminal investigators unless crime prevention was the main purpose for collecting the information in the first place.
II.
For this reason, I would affirm the district court’s grant of summary judgment as to both Merritt’s time card and the hunting roster.
Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, Circuit Judges and HIGGINBOTHAM, Senior Circuit Judge.*

 As to panel rehearing only.