USCA1 Opinion

 

 February 22, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1604 RICHARD NATHANSON, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy J. Gertner, U.S. District Judge] ____________________ Before Selya, Stahl and Lynch, Circuit Judges. ______________ ____________________ Richard Nathanson on brief pro se. _________________ Ann S. DuRoss, Assistant General Counsel, Robert D. McGillicuddy, _____________ _______________________ Senior Counsel, and Barbara S. Woodall, Counsel, Federal Deposit ____________________ Insurance Corporation, on brief for appellee. ____________________ ____________________ Per Curiam. In March 1992, plaintiff Richard Nathanson ___________ served as head of the loan workout department at Rockland Trust Company ("Rockland") and was in line for promotion to senior vice president. During that period, James Moore, a bank examiner for the Federal Deposit Insurance Corporation ("FDIC"), was conducting a supervisory examination of Rockland. Moore received the impression, during several discussions of problem loans in the department, that plaintiff was being less than cooperative--a concern that he voiced to Rockland executives. Shortly thereafter, Moore learned that plaintiff had been the subject of an Apparent Crime Report ("ACR"), filed by another bank, arising out of a line of credit in excess of $3 million that he had guaranteed. See 12 C.F.R. 353 (prescribing ACR reporting ___ requirements). Plaintiff had earlier disclosed this debt to both Rockland and the FDIC--a fact of which Moore was unaware. In an ensuing discussion with Rockland's president, Moore recommended that an inquiry be conducted into plaintiff's financial obligations; when pressed for further information, he revealed that the ACR had been filed but did not disclose its contents. Moore explained that he was not requesting plaintiff's termination. Plaintiff was nonetheless fired from his position shortly thereafter.  Plaintiff responded by filing the instant action against the FDIC for damages under the Privacy Act, claiming that disclosure of the ACR had been unlawful. See 5 U.S.C. 552a(g)(1)(D). On ___ the basis of the undisputed facts recited above, the district -2- court ended up granting summary judgment for defendant on two independent grounds. First, it held that disclosure of the ACR fell within the Act's "routine use" exception. Id. 552a(b)(3); ___ see 53 Fed. Reg. 7396, 7398 (1988) (FDIC "routine use" notice ___ permitting disclosure of ACRs to, inter alia, "a financial ___________ institution affected by enforcement activities or reported criminal activities"); see, e.g., FLRA v. Department of Navy, 941 ___ ____ ____ __________________ F.2d 49, 52-53, 58 (1st Cir. 1991) (discussing requirements for applying routine use exception). Alternatively, it ruled that, even if the Act had been violated, no damages were available inasmuch as Moore's conduct had not been "intentional or willful," as required by the Act. See 5 U.S.C. 552a(g)(4). ___ This appeal ensued. We affirm on the latter ground alone. As to the former, plaintiff contends on appeal that the court erred in two basic respects: in finding (1) that disclosure of the ACR was within the scope of the published exception (i.e., that Rockland was "affected" by the report), and (2) that such disclosure was compatible with the purposes for which the ACR had been collected. It is difficult to fault either of these conclusions based on the arguments before the court. What complicates the issue is a matter that the parties inexplicably failed to raise below (but that plaintiff has emphasized on appeal): the fact that the FDIC has elsewhere specifically indicated to the contrary. See 58 Fed. Reg. 28772, 28773 (1993) (rejecting ___ proposal that ACRs be made available to banks that are -3- considering employing or doing business with individuals mentioned therein, on ground that "privacy restrictions prevent FDIC from sharing information in reports of apparent crime with anyone other than appropriate federal law enforcement authorities"). The FDIC concedes that such commentary, published in connection with a 1993 revision to 12 C.F.R. 353, conflicts with the routine use notice at issue here. And while it insists that the matter can be ignored because of plaintiff's failure to mention it below, we think the agency is equally responsible for failing to alert the court to obviously relevant commentary of its own making. If the appeal hinged on this question, we would deem it appropriate to remand for consideration thereof by the district court in the first instance. Yet such commentary, published in 1993, has no bearing on whether Moore acted in an intentional or willful fashion in 1992. And on the basis of the evidence presented, we agree that summary judgment for defendant is warranted on this ground. As the parties agree, the intentional or willful standard is a stringent one which is viewed as "somewhat greater than gross negligence." Britt v. Naval Investig. Service, 886 F.2d 544, 551 (3d Cir. _____ ________________________ 1989) (quoting legislative history); accord, e.g., Wilborn v. ______ ____ _______ Department of HHS, 49 F.3d 597, 602 (9th Cir. 1995). In typical _________________ formulations, courts have held that an agency violates this standard by "committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act," Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. ________ _____________ -4- 1984), or by committing a violation "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful," Laningham v. United States Navy, 813 F.2d 1236, 1242 _________ __________________ (D.C. Cir. 1987) (internal quotations omitted); see, e.g., ___ ____ Andrews v. Veterans Admin., 838 F.2d 418, 424-25 (10th Cir.) _______ ________________ (reviewing caselaw), cert. denied, 488 U.S. 817 (1988). ____________ Even with the record construed in the light most favorable to plaintiff, there is nothing to suggest that Moore acted in any such fashion. The 1986 routine use notice, permitting disclosure of an ACR to an "affected" institution, afforded reasonable grounds for believing that his conduct was lawful. Moore himself so averred, stating that it was his understanding of agency policy to bring information concerning potential criminal activity to the attention of bank officials "in order for them to be alerted to or correct potential problems." And his failure to uncover the fact that plaintiff had earlier disclosed his loan obligations--even if negligent--fell well short of being "somewhat greater than gross negligence."  In this regard, plaintiff voices two procedural complaints: that the court resolved the willfulness issue (1) only after earlier announcing that it would not do so at the summary judgment stage, and (2) without addressing his request that any such ruling be deferred pending further discovery. Yet plaintiff acknowledged below that defendant's motion to dismiss was properly converted into one for summary judgment. He himself filed a motion for partial summary judgment. While he now claims -5- to have been caught by surprise by the court's ruling, he filed no motion for reconsideration below. And on appeal, he does not seek to vacate the judgment on this basis. Instead, he pursues quite a different route--arguing, in the alternative, that the evidence is sufficient for him to prevail on the willfulness issue or, at a minimum, that a genuine issue of fact has been demonstrated in this regard. We disagree in both respects. We therefore find no error. Affirmed.  _________ -6-