Charest v. US Dept. of Labor          CV-95-600-JD  09/19/96

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Robert A. Charest

      v.                                    Civil No. 95-600-JD

U.S. Dept. of Labor, et al.


                              O R D E R


     The plaintiff, Robert Charest, brought this pro se action

under the Federal Employees' Compensation Act ("FECA"), the

Freedom of Information Act ("FOIA"), and the Privacy Act, against

the defendants, the Department of Labor Office of Workers

Compensation Program ("OWCP"), and the Veterans Medical Center

("VMC").  Before the court is the defendants' motion to dismiss

or, in the alternative, for summary judgment (document no. 9).


                            Background

     The plaintiff retired from the military in 1981 and at some

point began receiving disability payments from the Department of

Veterans Affairs ("DVA") for knee and lower back injuries.  At

some point prior to March 22, 1988, he began work as an

operations officer for the Federal Emergency Management Agency

("FEMA").

     Following an injury sustained on February 13, 1990, the

plaintiff filed an injury claim under FECA, asserting that he was

experiencing back and cervical strain.[1]  On March 29, 1990, the plaintiff completed a form entitled "Claim for Compensation on Account of Traumatic Injury or Occupational Disease" on which he indicated that he had received benefits from the DVA.  On July 12, 1990, OWCP informed the plaintiff that he had been placed on temporary total disability and would receive a compensation check every twenty-eight days for seventy-five percent of his salary with FEMA.

On June 21, 1990, OWCP, in an effort to evaluate the plaintiff's compensation claim, requested "a medical abstract or copy of the most recent benefits examination" from the DVA. Declaration of Michele Ellion ¶ 8.  On July 19, 1990, OWCP received the requested documents.

On June 13, 1993, OWCP wrote the plaintiff's treating physician to determine whether the plaintiff still was suffering residual effects from the February 13, 1990, injury.  After receiving no reply from the physician, OWCP commissioned a second doctor to evaluate the plaintiff's injury.  After examining the plaintiff on April 1, 1994, and reviewing the information in his employee compensation file, including the DVA medical records,

---

[1]The February 1990 claim was the second injury claim that the plaintiff had filed under FECA.  As a result of an injury occurring on March 22, 1988, OWCP "granted a schedule award for an 18% permanent partial impairment to the left arm." Declaration of Michele Ellion ¶ 4.

the doctor concluded that the plaintiff was no longer disabled by the February 13, 1990, injury. Effective August 21, 1994, the plaintiff's compensation benefits were terminated.

The plaintiff appealed the termination. On May 2, 1995, a hearing representative affirmed the finding that the plaintiff no longer suffered a disability from the February 13, 1990, injury,[2] but ordered the physician to evaluate the continuing effects of the plaintiff's March 22, 1988, injury to his left shoulder. Following an examination performed on August 22, 1995, OWCP determined that the plaintiff still suffered residual effects of the March 22, 1988, injury, and, on April 11, 1996, awarded wage loss compensation retroactive to August 21, 1994.[3]

The plaintiff filed the instant action on December 21, 1995. Having construed his complaint and the addendum thereto liberally, the court understands his pleadings to request that the court review the termination of his workers compensation benefits under FECA, and to allege that OWCP and the VMC violated the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information

---

[2]On May 29, 1995, the plaintiff appealed this portion of the May 2, 1995, decision. On September 27, 1995, the appeal was denied. On March 10, 1996, the plaintiff filed another appeal, which currently is pending.

[3]The plaintiff was awarded benefits at a lower rate than he received prior to the August 21, 1994, revocation.

Act, 5 U.S.C. § 552, through the disclosure of his medical records without his knowledge or written consent.

## Discussion

I. <u>Plaintiff's Claims Under FECA</u>

The defendants assert that the court lacks subject-matter jurisdiction over a review of the plaintiff's worker's compensation claim because 5 U.S.C. § 8128(b) precludes judicial review of decisions made by OWCP under FECA. The statute provides:

> The action of the Secretary [of Labor] or his designee[4] in allowing or denying a payment under this subchapter is--
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C.A. § 8128(b) (West 1980). In interpreting this proscription against judicial review, the First Circuit has recognized that a district court may consider constitutional

_____

[4]5 U.S.C. § 8145(a) provides that the Secretary of Labor shall "decide all questions" under FECA, and permits the Secretary to "delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter." 5 U.S.C. § 8145(a) (West 1980). The Secretary has delegated "the responsibility for the administration and implementation" of the relevant provisions of FECA to the Director of OWCP. 20 C.F.R. § 10.2 (1996).

challenges to OWCP's decisions, but is not empowered to review adverse decisions on statutory grounds. <u>Paluca v. Secretary of Labor</u>, 813 F.2d 524, 526-28 (1st Cir.) (court has jurisdiction over constitutional claims that are not "wholly insubstantial"), <u>cert. denied</u>, 484 U.S. 943 (1987).

The plaintiff has not alleged that OWCP's decision violated a particular constitutional provision. Although he makes allegations of OWCP's bias against him in the addendum to his complaint, these allegations are too conclusory to support a claim under the Due Process Clause. <u>See</u> <u>Gorman v. University of Rhode Island</u>, 837 F.2d 7, 15 (1st Cir. 1988) (allegations of bias against administrators "must be based on more than mere speculation and tenuous inferences" (quotation marks omitted)). Accordingly, the plaintiff's claims under FECA are dismissed for lack of subject-matter jurisdiction.

II. <u>Privacy Act</u>

In pertinent part, the Privacy Act provides:

> **(b) Conditions of disclosure.**--No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--
>
> . . .

(3) for a routine use [duly published in the Federal Register].

. . . .

**(d) Access to records.**--Each agency that maintains a system of records shall--

. . .

(2) permit the individual to request amendment of a record pertaining to him and--

. . .

(B) promptly, either--

(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

(ii) inform the individual of its refusal to amend the record in accordance with his request . . . .

. . . .

**(g)(1) Civil Remedies.**--Whenever any agency

(A) makes a determination . . . not to amend an individual's record in accordance with his request . . . ;

. . .

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

6

> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
>
> the individual may bring a civil action against the agency, and the district courts of the Unites States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C.A. § 552a (West 1996).

The Act empowers federal courts to provide injunctive relief for an agency's failure to amend an individual's record, id. § 552a(g)(2)(A), and, where an agency willfully or intentionally fails to maintain a fair record or fails to comply with the Act, empowers federal courts to grant monetary relief, id. § 552a(g)(4). Although a court may order injunctive relief as a means of amending factual or historical errors in an individual's file, the Privacy Act is not a "vehicle for amending the judgments of federal officials or . . . other[s] . . . as those judgments are reflected in records maintained by federal agencies." Kleiman v. Department of Energy, 956 F.2d 335, 337 (D.C. Cir. 1992) (quoting Rogers v. United States Dep't of Labor, 607 F. Supp. 697, 699 (N.D. Cal. 1985) (alteration in original; emphasis omitted)); see also Pellerin v. Veterans Admin., 790 F.2d 1553, 1555 (11th Cir. 1986) (Privacy Act not a vehicle to attack otherwise unreviewable veterans benefit decisions).

7

The plaintiff does not specify in his complaint or the addendum thereto the relief he seeks under the Privacy Act. To the extent that he is seeking injunctive relief as a means of collaterally attacking OWCP's decision to discontinue his disability benefits stemming from his 1990 injury, the Privacy Act, as noted above, does not permit him to mount such a challenge. To the extent that the plaintiff seeks monetary relief for the disclosure of his medical records from the DVA, the court finds that the release of the information was authorized by the "routine use" provision of the Privacy Act, 5 U.S.C. § 552a(b)(3).[5] The DVA has authorized and duly published the disclosure of medical information to a federal agency to the extent that such disclosure is "relevant and necessary to that agency's decision regarding . . . the issuance or continuance of a . . . benefit given by that agency," Privacy Act Issuances, 1987 Comp., Volume V. ,p. 809, Use 2. Further, the Department of Labor permits disclosure of medical information to "[p]hysicans

---

[5]The statute defines the term "routine use" as "the use of [a] record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C.A. § 552a(a)(7) (West 1996). The use of a record is compatible with the purpose for which it is collected if a "meaningful degree of convergence" exists "between the disclosing agency's purpose in gathering the information and in its disclosure." United States Postal Serv. v. National Ass'n of Letter Carriers, 9 F.3d 138, 145 (D.C. Cir. 1993) (quoting Britt v. Naval Investigative Serv., 886 F.2d 544, 549-50 (3d Cir. 1989)).

8

and other health care providers for their use in treating the claimant and/or making an evaluation on behalf of OWCP."  56 Fed. Reg. 49,557 (proposed September 23, 1993; effective December 1, 1993).  The disclosures at issue fall clearly within these routine uses. In addition, a "meaningful degree of convergence" exists between the DVA's purpose in gathering the information-- i.e., to document the injuries the plaintiff sustained in the military and the benefits he received therefrom--and the purpose of disclosing the information to OWCP and its medical staff-- i.e., to determine whether the injuries the plaintiff sustained in the military, including the injury to his back, were the cause of his continued disability.  As such, the plaintiff's claim for damages under the Privacy Act fails.

The court grants summary judgment to the defendants on the plaintiff's claim under the Privacy Act.


III.  Freedom of Information Act

It is well settled that FOIA, 5 U.S.C. § 552, affords neither a "private right of action to enjoin agency disclosure," Chrysler Corp. v. Brown, 441 U.S. 281, 285 (1979), nor money damages, Sterling v. United States, 798 F. Supp. 47, 48 (D.D.C. 1992), aff'd, 1994 WL 88894, No. 93-5264 (D.C. Cir. Mar. 11,

9

1994).  Thus, the plaintiff's objections to the release of his medical records fail to state a claim under FOIA.

The court notes that the APA, 5 U.S.C. § 702, supplies a cause of action for what is commonly known as a "reverse FOIA" claim--i.e., petitioning the court to enjoin disclosure under FOIA, see CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1133 n.1 (D.C. Cir. 1987), cert. denied, 485 U.S. 1977 (1988).  However, the APA does not provide for money damages.  Sterling, 798 F. Supp. at 48 n.2 (citing Transohio Sav. Bank v. Director, Office of Thrift Supervision, 967 F.2d 598, 607 (D.C. Cir. 1992)).  Thus, where the documents in question already have been released, a plaintiff cannot assert a reverse FOIA claim.  Given that the plaintiff's medical records already have been disclosed to OWCP, the plaintiff's reverse FOIA claim also must fail.

The court grants summary judgment to the defendants on the plaintiff's FOIA and reverse FOIA claims.


## Conclusion

The defendant's motion to dismiss, or in the alternative, for summary judgment (document no. 9) is granted.  The court has no jurisdiction over the plaintiff's claim under the Federal Employee Compensation Act, and therefore the claim is dismissed. The court grants summary judgment to the defendants on the

10

plaintiff's claims under the Privacy Act and the Freedom of Information Act.  The clerk is ordered to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

September 19, 1996

cc:  Gretchen Leah Witt, Esquire
     Robert A. Charest, Esquire

11