# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 20, 2017         Decided June 30, 2017

No. 16-5064

HARRIETT A. AMES,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND
UNITED STATES DEPARTMENT OF DEFENSE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00629)

*John F. Karl, Jr.* argued the cause for appellant. With him on the briefs was *Kristen Grim Hughes*.

*Damon Taaffe*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney. *Patricia K. McBride*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:   Harriett Ames was Chief of the Personnel Security Branch in the Federal Emergency Management Agency, which is part of the U.S. Department of Homeland Security.   As Chief of the Personnel Security Branch, Ames reviewed security clearance applications for prospective DHS employees.   In 2012, an internal investigation by DHS's Office of Inspector General determined that Ames had granted two security clearances that should have been rejected.   The Office of Inspector General also found that Ames had made false statements during the investigation.   The Office of Inspector General ultimately prepared a report documenting those conclusions.

A few months before the Inspector General's report was finished, however, Ames left her employment at DHS.   Ames obtained a position in the Personnel Security Division of the National Geospatial-Intelligence Agency, an agency in the Department of Defense.   For ease of reference, we will refer to Ames's new employer as DOD.

After learning of Ames's move to another federal agency, the DHS agent who prepared the Inspector General's report (Special Agent K.C. Yi) sent the Inspector General's report to DOD.   After reviewing the Inspector General's report and conducting its own review of the matter, DOD fired Ames.

Ames subsequently sued DHS and DOD under the Privacy Act.   *See* 5 U.S.C. § 552a.   Ames argued that DHS's disclosure of the report to DOD violated the Privacy Act.   In a thorough and persuasive opinion, the District Court rejected Ames's argument.   We affirm.   Like the District Court, we conclude that DHS's disclosure of the Inspector General's report to DOD was permissible under the Privacy Act.

3

* * *

In 1974, Congress passed and President Ford signed the Privacy Act. *See* Pub. L. No. 93-579, 88 Stat. 1896 (codified as amended at 5 U.S.C. § 552a). As relevant here, the Privacy Act forbids disclosure by executive and independent agencies of "any record" to "any person, or to another agency," without the consent of the individual to whom the record pertains. 5 U.S.C. § 552a(b).

The Privacy Act contains some exceptions. As relevant here, the Act allows an agency to make disclosures that constitute a "routine use" of the record. *Id*. § 552a(b)(3). To fit within the confines of the routine use exception to the Privacy Act, an agency's disclosure of a record must be both (i) "for a purpose which is compatible with the purpose for which it was collected" and (ii) within the scope of a routine use notice published by the agency. *Id*. § 552a(a)(7), 552a(e)(4)(D).

Here, DHS's disclosure of the Inspector General's report to DOD satisfied both requirements.

*First*, the purpose of DHS's disclosure of the Inspector General's report to DOD was compatible with the purpose for which the report was collected. DHS's purpose in collecting the report was to determine whether Ames had committed wrongdoing that could affect her suitability for federal employment. But before DHS could take action against Ames, Ames left her job at DHS and moved to DOD. DHS's purpose in disclosing the report to DOD was to enable DOD to determine whether Ames should continue to be employed there. DHS's purpose in disclosing the report was therefore compatible with DHS's purpose in collecting the report. After all, it would be strange indeed if an employee such as Ames

could avoid the consequences of one agency's Inspector General investigation by simply high-tailing it to another agency before the Inspector General's investigation was finished.[1]

*Second*, as required by the Privacy Act, DHS's disclosure of the DHS Inspector General's report to DOD met the requirements of a DHS routine use notice. Indeed, it met the requirements of two routine use notices: Routine Use G and Routine Use H.

Routine Use G allows DHS to disclose records (i) to other federal agencies "charged with investigating or prosecuting" violations of law, (ii) where the record "indicates a violation or potential violation of law," and (iii) where such disclosure is "proper and consistent with the official duties of the person making the disclosure." Department of Homeland Security

---

[1] This Court has not definitively determined the precise meaning of "compatible." *See Postal Service v. National Association of Letter Carriers, AFL-CIO*, 9 F.3d 138, 144-46 (D.C. Cir. 1993). Other courts have held that compatibility requires a "meaningful degree of convergence" between the agency's purpose in collecting the record and the agency's purpose in disclosing the record. *See, e.g.*, *Britt v. Naval Investigative Service*, 886 F.2d 544, 549 (3d Cir. 1989); *Swenson v. Postal Service*, 890 F.2d 1075, 1078 (9th Cir. 1989). Judges Silberman and Williams, in *Postal Service v. National Association of Letter Carriers*, 9 F.3d 138 (D.C. Cir. 1993), took two different approaches. Judge Silberman, while observing that it was not necessary to define the term "compatible" for purposes of the case before the Court, cited to the common usage of "compatible," and to the tighter definition used in two circuits requiring "a nexus approaching an identity of purpose." *Id.* at 144 (opinion of Silberman, J.) (citing from the Third and Ninth Circuits). Judge Williams, on the other hand, would hold that purposes are compatible so long as there is "no *conflict*" between them. *Id.* at 146-47 (Williams, J., concurring).

Here, we need not decide the precise formulation of the compatibility requirement. Under any reasonable formulation of the compatibility test, DHS's purpose in disclosing the Inspector General's report to DOD was compatible with the purpose for which the report was collected.

Office of Inspector General-002 Investigative Records System of Records, 74 Fed. Reg. 55,569, 55,571 (Oct. 28, 2009). In this case, all three requirements are met. First, DHS disclosed the report to an agency "charged with investigating or prosecuting" violations of law. *Id.* at 55,571. The DHS Office of Inspector General disclosed the report to an Office of Inspector General in DOD. That Office of Inspector General in DOD is charged with investigating violations of law. *See* Inspector General Act of 1978, Pub. L. No. 95-452, § 4(a)(4), 92 Stat. 1101, 1102. Second, the DHS Inspector General's report on Ames showed "a violation or potential violation of law." 74 Fed. Reg. at 55,571. The report concluded that Ames had made false statements to investigators and had mishandled security clearances in violation of DHS regulations. Third, DHS's disclosure was "consistent with the official duties of the person making the disclosure." *Id.* at 55,571. Agent Yi, the investigator in DHS's Office of Inspector General, was charged with investigating misconduct by employees and with coordinating with other federal agencies to ferret out fraud and abuse in the government. *See* Inspector General Act of 1978 § 4(a)(4).

Although DHS needs to show only one routine use to justify the disclosure in this case, we note that Routine Use H also applies here. Routine Use H allows DHS to disclose records to other federal agencies "in order to provide intelligence, counterintelligence, or other information for the purposes of intelligence, counterintelligence, or antiterrorism activities authorized by U.S. law, Executive Order, or other applicable national security directive." 74 Fed. Reg. at 55,571. DHS disclosed the Inspector General's report to DOD in order to provide information to DOD for the purposes of DOD's intelligence, counterintelligence, or antiterrorism activities. In particular, in her old position at DHS and in her new position at DOD, Ames was responsible for the

adjudication of security clearances. The adjudication of security clearances helps determine who may participate in intelligence, counterintelligence, or antiterrorism activities authorized by U.S. law. DHS disclosed its report on Ames to DOD so that DOD could determine whether Ames should continue to be involved in determining who may participate in such intelligence, counterintelligence, or antiterrorism activities. Therefore, DHS's disclosure of the report readily qualified as a routine use under Routine Use H.

In sum, DHS's disclosure to DOD of its report on Ames qualifies as a "routine use" of the report. The disclosure of the report was therefore permissible under the Privacy Act.

\* \* \*

We have considered all of Ames's arguments on appeal. We affirm the judgment of the District Court.

*So ordered.*