Farrokh FATTAHI, Plaintiff,

v.

BUREAU OF ALCOHOL, Tobacco
& Firearms, Defendant.

No. CIV.A.01–1094–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 26, 2002.

Richard E. Gardiner, Fairfax, for Plaintiffs or Petitioners.

Mark David Maxwell, U.S. Attorney's Office, Alexandria, for Defendants or Respondents.

### MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff's sole claim in this action is that an Alcohol, Tobacco & Firearms' (ATF) employee violated plaintiff's rights under the Privacy Act[1] by disclosing to plaintiff's condominium association that plaintiff had applied for a federal license to sell firearms from his condominium residence. At issue on summary judgment is whether the challenged disclosure was consented to by plaintiff or otherwise authorized by the Act as a "routine use."

## I.

Plaintiff Farrokh Fattahi applied to the ATF's National Licensing Center for a federal firearms license (FFL) in September 2000. Plaintiff stated on his application that he intended to engage in the sale of handguns, rifles, and shotguns for profit, and he listed his home, a residentially zoned condominium apartment in Falls Church, Virginia, as the proposed address for his firearms business. Plaintiff also indicated on the application that his firearms business would operate seven days a week, from 6 p.m. to 9 p.m. on weekdays and throughout the day on weekends. As the application form required, plaintiff certified that the firearms business he

1. 5 U.S.C. § 552a

planned to conduct under the federal firearms license was not prohibited by state or local law at the proposed business address.[2] Finally, plaintiff signed the application, thus certifying that the information he provided was true to the best of his knowledge and granting consent for ATF to examine and obtain various records, statements, and information regarding plaintiff's background.[3] The application instructions contained a "Privacy Act Information" section that stated, among other things, that the information on the form "may be disclosed to members of the public in order to verify the information on the application when such disclosure is not prohibited by law."

Plaintiff's completed FFL application was forwarded to the ATF's Richmond field office, which began the requisite investigation[4] to verify the information on the application. In November 2000, plaintiff contacted ATF's Richmond office to inquire about the status of his application and was referred to Robert Angelo, the area supervisor. Angelo expressed concern that plaintiff's condominium residence might not be an appropriate "business premises" for a firearms business. Plaintiff responded that he had received approval to conduct the business in his home from the Fairfax County Department of Planning and Zoning.[5] The matter was not resolved and the ATF investigation continued.

In mid-December 2000, Angelo again spoke with plaintiff and informed him that ATF needed to ensure that issuance of the license would not violate the condominium bylaws of plaintiff's residence. In response, plaintiff provided Angelo with the name and telephone number of the condominium owners association's community manager, but told Angelo that he was not to use plaintiff's name or unit number when making inquiries. When Angelo contacted the community manager, he was directed to the condominium association's legal counsel. Angelo then contacted the counsel, identified himself, and inquired whether a firearms dealer could operate out of one of the units in the condominium. The association's counsel responded that some units allowed commercial activities, but residential units generally did not unless there was some special permission to

---

**2.** The relevant statement in Item 24 of the application reads: "The business to be conducted under the Federal firearms license is not prohibited by State or local law at the premises shown in Item 5. This includes compliance with zoning ordinances." Item 5 of the application is entitled "business address."

**3.** The certification on the application states in relevant part:

I declare that I have examined this application and the documents submitted in support thereof, and to the best of my knowledge and belief, they are true, correct and complete. This signature, when presented by a duly authorized representative of the Department of the Treasury, will constitute my consent and authority to examine and obtain copies and abstracts of records and to receive statements and information regarding my background. Specifically, I hereby authorize the release of the following data or records to ATF: Employment information, military information/records, medical information/records, police and criminal records.

**4.** *See* 27 C.F.R. § 178.47(a).

**5.** The record contains both a letter that plaintiff wrote to the Fairfax County Department of Planning and Zoning requesting zoning approval and the Department's response. In his letter, plaintiff stated that his "specialty sporting goods and firearms" business would be small—"more like a hobby"—with "no foot traffic, no inventory, and no retail sales." In the Department's response, the Deputy Zoning Administrator relied on plaintiff's description of his proposed activity to conclude that the proposed business activity was "most similar to a hobby and not a home based business." The letter went on to inform plaintiff that no zoning approval was needed for operating such a "hobby" business out of a home.

do so. Angelo then provided plaintiff's name and unit number and asked the association's counsel to report back whether a firearms dealer could operate out of that specific unit. This action followed.

In his one-count complaint, plaintiff claims that Angelo's disclosure of plaintiff's FFL application to the condominium association's counsel is a violation of the federal Privacy Act, 5 U.S.C. § 552a(g)(1)(D), for which he requests actual damages of $10,000 for mental distress and expenses. Plaintiff also seeks attorney's fees pursuant to 5 U.S.C. § 552a(g)(4). In response to the complaint, defendant filed a motion to dismiss, or in the alternative for summary judgment. At the hearing on the motion, counsel for plaintiff argued that summary judgment was inappropriate because there might be disputed issues of fact to which plaintiff had not been provided opportunity for discovery. Notwithstanding the absence of a Rule 56(f) affidavit, the Court, noting the early stage of the litigation, deferred judgment on the motion to allow plaintiff to conduct discovery. Plaintiff then proceeded to depose ATF area supervisor Angelo, after which the parties submitted supplemental memoranda and presented additional oral argument. The parties concur that the matter is now ripe for summary disposition.

## II.

 The Privacy Act prohibits federal agencies from disclosing their records to any person or to another agency[6] and provides a private cause of action for an individual who has suffered an adverse effect as the result of a disclosure in violation of the Act.[7] There are thirteen statutory exceptions to the Act's general prohibition against disclosure, only two of which are relevant here. They are:

(1) disclosure made pursuant to the written consent of the individual to whom the record pertains,[8] and

(2) disclosure made for a "routine use" as defined in the statute.[9]

Thus, to establish a Privacy Act cause of action, plaintiff must establish, by a preponderance of the evidence, the following five elements regarding the allegedly unauthorized disclosure of information:

(1) that the information allegedly disclosed is covered by the Act as a "record" contained in a "system of records";

(2) that the agency disclosed the information;

(3) that the disclosure was without plaintiff's consent and did not fit within one of the enumerated exceptions to the anti-disclosure provision;

(4) that the disclosure was willful or intentional; and

(5) that the disclosure had an adverse effect on the plaintiff.

*See Gowan v. U.S. Dept. of Air Force,* 148 F.3d 1182, 1193 (10th Cir.1998); *Quinn v. Stone,* 978 F.2d 126, 131 (3d Cir.1992). The parties' dispute on summary judgment focuses on the third element. ATF contends that it is entitled to summary judgment on two, alternative grounds, namely (1) that plaintiff consented to the challenged disclosure, as provided in § 552a(b), by signing the FFL application, and (2) that the disclosure was a permissible "routine use" of the application pursuant to § 552a(b)(3).[10] Each of these grounds is addressed separately.

---

**6.** 5 U.S.C. § 552a(b).

**7.** 5 U.S.C. § 552a(g)(1)(D).

**8.** 5 U.S.C. § 552a(b).

**9.** 5 U.S.C. §§ 552a(b)(3), 552a(a)(7), and 552a(e)(4)(D).

**10.** For summary judgment purposes, it is appropriate to assume that plaintiff can estab-

## A. Consent

■ There are two parts to ATF's consent argument. First, ATF argues that plaintiff consented to the challenged disclosure when he signed the consent on the application, which states that ATF may "examine and obtain copies and abstracts of records and ... receive statements and information regarding [plaintiff's] background." [11] This argument is unpersuasive because the scope of this consent does not reach the challenged disclosure. Instead, this consent is limited; it only allows ATF to examine and obtain copies of various records pertaining to plaintiff; it does not cover disclosing to plaintiff's condominium association that he has applied for an FFL in connection with a request for information about plaintiff's residence.

ATF's second consent argument is that plaintiff's signature on the application consents to the challenged disclosure because plaintiff acknowledged in the form that information on the application "may be disclosed to members of the public in order to verify the information on the application when such disclosure is not prohibited by law." [12] This argument is equally unpersuasive. The statement plaintiff acknowledged is a mere tautology: plaintiff consented to no more than that ATF may disclose information except in cases where that disclosure is prohibited. Thus, plaintiff did not consent to any prohibited disclosure, which is, of course, what he claims occurred here.

## B. Routine Use

■ An agency's disclosure of a record for a "routine use" is exempt from the Privacy Act's general prohibition of disclosure. See 5 U.S.C. § 552a(b)(3). An individual's consent to release of information about him that is contained in agency records is *not* required when the "routine use" exception is applicable. "Routine use" is defined in the statute as a disclosure or use of a protected "record for a purpose *which is compatible* with the purpose for which it was collected." *Id.* § 552a(a)(7) (emphasis added). The statute also requires that the agency publish in the Federal Register "each routine use of the records contained in the system, including the categories of users and the purpose of such use." *Id.* § 552a(e)(4)(D). These requirements establish two distinct tests that must be satisfied for a disclosure to qualify as a "routine use." First, the disclosure of a record must be compatible with the agency's purpose in collecting the record, and second, the disclosure must be in accordance with the "routine uses" the agency has published in the Federal Register.

### 1. "Compatibility" Between Purpose of Disclosure and Purpose of Collection

■ The first requirement—of "compatibility"—requires a "dual inquiry into the purpose for the collection of the record in the specific case and the purpose of the disclosure." *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 548–9 (3d Cir.1989). For the two purposes to be compatible, there must be a "concrete relationship or similarity ... between the disclosing agency's purpose in gathering the information and in its disclosure." *Id.* at 549–50.[13]

---

lish the other four elements. *See Hill v. Michelin North America, Inc.*, 252 F.3d 307, 314 (4th Cir.2001) (assuming, for summary judgment purposes, that plaintiff presented sufficient evidence to carry his burden on other elements of the claim).

**11.** ATF Form 7, Item 25.

**12.** Instruction Sheet for ATF Form 7, Privacy Act Information, ¶ 1.

**13.** In *Britt*, the Third Circuit found that information collected in connection with a criminal investigation by the Naval Investigative Service of a reserve military officer was incompatible with disclosure of the investigation to the Immigration and Naturalization

Thus, ATF's disclosure in this case would qualify as a "routine use" if there is "compatibility" between the purpose for which ATF collected plaintiff's name and proposed business address and ATF's disclosure of that information to the condominium association's counsel.

The statutory requirements for obtaining an FFL are found in 18 U.S.C. § 923. Section 923(a) requires that a person file an application and receive a license before engaging in the business of dealing in firearms. For an application to be approved, the applicant must certify that "the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located," *id.* § 923(d)(1)(F)(i), and the applicant must not willfully fail to disclose any material information or make any false statement as to any material fact in connection with his application. *Id.* § 923(d)(1)(D). Thus, for a license to issue, an applicant must *truthfully* certify that neither state nor local law prohibits the operation of a firearms business in the location proposed by the applicant. The relevant regulations incorporate the statutory requirements and make clear that the ATF's National Licencing Center has the responsibility to ensure that an applicant for a license is qualified, "through further inquiry or investigation, or otherwise." 27 C.F.R. § 178.47(a). The regulations thus create a

duty for ATF to ensure the truthfulness of statements made on the application.

■ The facts of this case lend themselves to a simple compatibility analysis. The purpose for which ATF collected plaintiff's name and proposed business address was to ensure that he satisfied the statutory requirements for an FFL. This purpose is clearly disclosed in ATF's notice in the Federal Register, which states with respect to ATF records: "The purpose of this system [of records] is to determine suitability, eligibility or qualifications of individuals who are engaged or propose to engage in activities regulated by ATF ...." 63 Fed.Reg. 69754. Angelo's disclosure to the condominium association's counsel of the fact that plaintiff had applied for an FFL was, according to Angelo's deposition, for the purpose of verifying plaintiff's statement on the application that the business to be operated under the license was not prohibited at the proposed business address, plaintiff's condominium residence.[14] In these circumstances, the requisite compatibility of purposes is manifest: Both collection and disclosure of the information were for the same purpose, namely ascertaining whether it would be appropriate to issue plaintiff an FFL to sell firearms from his condominium residence. Thus, the "compatibility" requirement for the "routine use" exemption is plainly satisfied.

Service, which was the reserve officer's employer. *See also Covert v. Harrington,* 876 F.2d 751, 755 (9th Cir.1989) (information collected for security clearance purposes was incompatible with disclosure for purposes of criminal investigation of subsequent actions); *cf. United States v. Miller,* 643 F.2d 713, 715 (10th Cir.1981) (information given by a criminal defendant to his parole officer was compatible with disclosure to the FBI and postal inspectors to further a criminal investigation).

14. *See* Deposition of Robert M. Angelo at 13 ("I asked [the inspector] to make sure that there wouldn't be anything that would prohib-

it the business premises from being there .... That [the condominium association] didn't have any type of rules or regulations that would prohibit a business from operating out of that location.") (hereinafter Angelo Deposition); *id.* at 23 ("What I needed to know was, was there anything in any of the rules for that particular unit—was there anything in any rules or governances or anything that would prevent the applicant from having a firearms business there."); *id.* at 35 ("I told him if there was anything that would prohibit the person from having a business premises there that he would have to let me know ....").

### 2. Compliance with the "Routine Use" Published in the Federal Register

■ The disclosure of information for a "routine use" must also fall within the list of "routine uses" published by an agency in the Federal Register. *See Local 2047, Am. Fed'n of Gov't Employees v. Defense Gen. Supply Ctr.*, 573 F.2d 184 (4th Cir. 1978) (information may not be disclosed if not published as a "routine use"). The purpose of this requirement is to put citizens on notice of the uses that an agency might make of the information in its records. *See Britt*, 886 F.2d at 548. In compliance with this requirement, ATF published in the Federal Register the following "routine use" for records, such as applications for FFLs, that are contained in the ATF's Regulatory Enforcement Record System:

> A record in this system may be disclosed as a routine use to ... any third party to the extent necessary to collect or verify information pertinent to the Bureau's decision to grant, deny or revoke a license or permit ....

63 Fed.Reg. 69754. The question is then whether Angelo's disclosure to the condominium association's counsel fits within this published "routine use."

■ The published "routine use" is quite broad. It covers essentially any disclosure necessary to collect or verify information "pertinent" to ATF's decision to grant, deny, or revoke a license. Angelo's disclosure to the condominium association's counsel fits comfortably within the scope of this definition of "routine use."

As the record reflects, the disclosure occurred because the condominium association's counsel could not tell Angelo whether a firearms business was prohibited by the condominium bylaws and documents without disclosure of the precise residential unit in issue. Thus the disclosure was necessary so that Angelo could obtain information plainly pertinent to ATF's decision whether to issue a license, namely, whether the condominium bylaws and other documents prohibited the operation of a firearms business from plaintiff's residence.

Plaintiff makes two arguments against this conclusion, neither of which succeeds. First, plaintiff argues that the disclosure was not "necessary" and thus does not comport with the published notice that records may be disclosed "to the extent necessary" because Angelo, in his deposition, characterized his inquiry to the condominium association's counsel as an inquiry into whether plaintiff had appropriate "business premises," not whether the business would be in compliance with state law at the proposed location. This distinction is important, plaintiff contends, because the statute does not require "business premises," but only "premises from which [the applicant] conducts business." *Id.* § 522a(d)(1)(E).[15] So, plaintiff argues, because the statute does not require "business premises," Angelo's inquiry concerning appropriate "business premises" was not "necessary."

This argument fails; it both misconstrues the thrust of Angelo's testimony and, in any event, mistakenly relies on

---

**15.** This distinction was discussed extensively in *National Coalition to Ban Handguns v. Bureau of Alcohol, Tobacco & Firearms*, 715 F.2d 632 (D.C.Cir.1983). There, the D.C. Circuit concluded that use of the word "premises" allowed for the possibility of conducting a firearms business at a location that is a private dwelling and not a commercial enterprise. That point is not contested here. Plaintiff attempts to use the distinction between "premises" and "business premises" to avoid the requirement in § 522a(d)(1)(F)(i) that the business must not be prohibited by state or local law at the place where the premises are located. But the requirement in § 522a(d)(1)(F)(i) is distinct from that of § 522a(d)(1)(E) and the case cited is inapposite on this point.

Angelo's lack of understanding or clarity concerning the legalities of the situation. To begin with, although Angelo. at one point in his deposition stated that his inquiry to the condominium association's counsel did not concern zoning or state law,[16] he made clear elsewhere that the point of his inquiry was to determine whether there was anything in the condominium association's rules or regulations that would prohibit a firearms business from operating in plaintiff's condominium residence.[17] That effort, regardless of how Angelo characterizes it, was clearly an inquiry to determine whether the business would be in compliance with state law.[18] Angelo's lack of legal technical expertise and mistake of law in characterizing his inquiry does not alter what the statute permits. ATF may investigate the truthfulness of plaintiff's statement that his business would be in compliance with state and local law, and that is precisely what Angelo was doing when he made the challenged disclosure.

Plaintiff's second argument is that it was not absolutely "necessary" for Angelo to disclose plaintiff's name and unit number to the condominium association's counsel because Angelo could have determined the specific restrictions applicable to plaintiff's condominium without revealing plaintiff's name or the purpose for the inquiry. As plaintiff concedes, this would have required ATF investigators to search land records for the pertinent documents and then to determine the legal effect of condominium bylaws and instruments without recourse to a ready and available source of that same information, namely the condominium association.[19] A sensible and practical construction of the term "necessary" as used in the published "routine use" definition should not result in the imposition of such a heavy burden on ATF. Rather, a practical reading of the published "routine use" is that authorized disclosures include those *reasonably* necessary to verify pertinent information, not just those where verification *cannot conceivably* be obtained by any other means.[20] To conclude otherwise is at odds with a statutory scheme that is, of course, aimed at safeguarding privacy but also contemplates that ATF will perform its verification function expeditiously and efficiently.[21] In the

---

16. *See* Angelo Deposition at 47.

17. *See supra* note 14.

18. Virginia law gives validly executed condominium instruments the force of law and mandates that condominium owners comply with those instruments. The Virginia statute provides, in relevant part, that "every unit owner ... shall comply with ... all provisions of the condominium instruments." Va. Code § 55–79.53.

19. Alternatively, of course, plaintiff might have chosen to submit a formal legal opinion to ATF. Plaintiff never offered this option.

20. While there is no authority directly on point, analogous authority supports this contextual construction of "necessary." *See Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), *overruled on other grounds by McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (Judicial Code authorization of writs "necessary" for the exercise of jurisdiction does not mean essential, but only reasonably necessary in the interest of justice); *Int'l Trading Co. v. Comm'r of Internal Revenue,* 275 F.2d 578 (7th Cir.1960) ("necessary" business expenses in the income tax statute refer to those expenses which are "appropriate and helpful" to the business); *United States v. Moore,* 917 F.2d 215 (6th Cir.1990) (a "necessary" witness within the meaning of the criminal subpoena rule is not limited to witnesses who are absolutely essential, but extends to witnesses who are relevant, material, and useful to an adequate defense).

21. ATF is ordinarily required to approve or deny an application for an FFL within sixty days of its receipt. 18 U.S.C. § 923(d)(2). ATF's use of the word "necessary" in its published "routine uses" must be read in conjunction with the time restrictions that Congress placed on ATF in the statute and must

circumstances at bar, an inquiry to the condominium association's counsel was reasonably necessary for ATF to perform its licensing function effectively and efficiently.[22] The regulation does not require more.

In sum, the disclosure in issue qualifies as a "routine use" because the disclosure was compatible with the purpose for collecting the information and the disclosure falls within the plain language of ATF's published "routine uses."

### III.

Because ATF's disclosure of plaintiff's FFL application to the condominium association's counsel is a "routine use" permitted by the Privacy Act, summary judgment is appropriate and plaintiff's complaint must be dismissed. An appropriate order has issued.[23]

be interpreted such that ATF may call on reasonably and practically available sources of information to enable it to carry out its responsibilities efficiently and expeditiously.

22. Worth noting is that Angelo first attempted to obtain the information without making a disclosure and ultimately did so only when the condominium association's counsel advised him that no definitive answer could be

given concerning the permissibility of the business within the condominium without disclosure of the identity of the precise residential unit involved.

23. Although not material to the disposition of this case, it may be of interest to readers of the opinion to know that plaintiff was ultimately issued an FFL to conduct his firearms business at another location.