PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FARROKH FATTAHI,

    *Plaintiff-Appellant,*

   v.

BUREAU OF ALCOHOL, TOBACCO AND FIREARMS,

    *Defendant-Appellee.*

No. 02-1586

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-01-1094-A)

Argued: February 27, 2003

Decided: April 30, 2003

Before WILKINS, Chief Judge, MOTZ, Circuit Judge,
and C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Motz and Senior Judge Beam joined.

## COUNSEL

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, for Appellant. Brian David Miller, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Farrokh Fattahi appeals a district court order granting summary judgment against him in his Privacy Act suit against the Bureau of Alcohol, Tobacco, and Firearms (ATF). *See* 5 U.S.C.A. § 552a (West 1996 & Supp. 2003). Finding no error, we affirm.

I.

Fattahi applied to ATF for a federal firearms license (FFL) in September 2000. His application indicated that he intended to sell handguns, rifles, and shotguns from his Virginia condominium. Fattahi's application was forwarded to ATF's Richmond field office, which commenced its investigation into Fattahi's suitability to receive an FFL.

In late November 2000, ATF Inspector Michael Atkins contacted Fattahi's condominium association and obtained a copy of the condominium rules and regulations, which prohibited the operation of a business in a residential unit. Atkins then contacted Fattahi, informed him of the prohibition, and told him that he needed to find another location or withdraw his license application. Fattahi contacted Atkins approximately three weeks later and told him that he had discussed the issue with his attorney and determined that the rules and regulations should not affect his suitability to receive an FFL. In late December, Atkins informed Richmond-area ATF supervisor Robert Angelo of these facts. Angelo subsequently talked to Fattahi about the restrictions in the rules and regulations and similar restrictions in the condominium bylaws.[1] Fattahi continued to maintain, however, that neither the rules and regulations nor the bylaws should affect ATF's FFL decision.

Soon after his conversation with Fattahi, Angelo contacted the condominium association's legal counsel ("the association's counsel") and asked whether a firearms dealer could operate out of one of the

---

[1] The rules and regulations clarified and supplemented the bylaws.

condominium units. The association's counsel informed Angelo that commercial activities were generally prohibited in residential units absent special permission, and if Angelo told him which specific unit was at issue, he could let him know whether special permission had been granted. Angelo then provided Fattahi's name and unit number. The association's counsel subsequently informed Angelo that the condominium board had not granted anyone special permission to sell firearms from a residential unit, and if Fattahi's FFL were granted, the condominium association would seek to enjoin operation of his business.

Fattahi subsequently filed this suit, alleging that Angelo's disclosure of Fattahi's application to the association's counsel violated the Privacy Act. After Angelo was deposed, ATF moved for, and was granted, summary judgment. *See Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 186 F. Supp. 2d 656 (E.D. Va. 2002) (*Fattahi I*). The district court later denied Fattahi's motion for reconsideration. *See Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 195 F. Supp. 2d 745 (E.D. Va. 2002) (*Fattahi II*).

## II.

Fattahi contends that the district court erred in granting summary judgment against him. "We review the grant of summary judgment de novo, and we must affirm if the undisputed facts establish that [ATF] was entitled to judgment as a matter of law." *Miller v. AT&T Corp.*, 250 F.3d 820, 830 (4th Cir. 2001); *see also Covert v. Harrington*, 876 F.2d 751, 754 (9th Cir. 1989) (explaining that whether a particular disclosure violated the Privacy Act is a legal question).

Except under certain circumstances, the Privacy Act prohibits federal agencies from disclosing personal information that the agencies have compiled. As is relevant here, disclosure is allowed "for a routine use." 5 U.S.C.A. § 552a(b)(3). For a disclosure to qualify as a "routine use," it must be compatible with the purpose for which the agency collected the personal information, *see* 5 U.S.C.A. § 552a(a)(7), and be in accordance with a routine use the agency has published in the Federal Register, *see* 5 U.S.C.A. § 552a(e)(4)(D).[2]

---

[2]These requirements serve to "discourage the unnecessary [disclosure] of information to another person or to agencies who may not be as sensi-

The district court concluded that the disclosure here was for a routine use because the disclosure was made to determine whether Fattahi satisfied the licensing requirement that the operation of the applicant's business in the listed premises would not violate state law. *See* 18 U.S.C.A. § 923(d)(1)(F)(i) (West 2000) (requiring applicant to certify that "the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located"); Va. Code Ann. § 55-79.53(A) (Michie Supp. 2002) (stating that "every unit owner . . . shall comply with . . . all provisions of the condominium instruments"); Va. Code Ann. § 55-79.41 (Michie Supp. 2002) (defining "condominium instruments" to include "bylaws . . . recorded pursuant to the provisions of this chapter"). The district court determined that ATF's purpose for disclosing Fattahi's application—to determine his suitability for a license—was compatible with the purpose for which the information was collected. *See Fattahi I*, 186 F. Supp. 2d at 661; Notices, 63 Fed. Reg. 69,716, 69,754 (Dec. 17, 1998) (stating that purpose of obtaining license application is to evaluate an applicant's "suitability, eligibility or qualifications" for a license). The court also concluded that the disclosure was in accordance with a routine use published in the Federal Register allowing a record to be disclosed to "any third party to the extent necessary to collect or verify information pertinent to the Bureau's decision to grant . . . a license." 63 Fed. Reg. at 69,754. The court determined that the disclosure was necessary because the association's counsel told Angelo that he needed to know the particular unit at issue to determine whether operation of a firearms business would be allowed. *See Fattahi I*, 186 F. Supp. 2d at 662.

### A.

On appeal, Fattahi first argues that in reviewing whether disclosure was "necessary" for Angelo to collect information pertinent to his investigation—and therefore in accordance with a routine use published in the Federal Register—we must limit ourselves to Angelo's

---

tive to the collecting agency's reasons for using and interpreting the material" and to notify citizens of the ways their information may be used by the collecting agency. *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 548, 550 (3d Cir. 1989) (internal quotation marks omitted).

theory of why a bylaw prohibition would be pertinent. Fattahi notes that Angelo testified that his investigation of the bylaws was not to determine whether the business would violate state law, but to determine whether Fattahi satisfied the license requirement that he have business premises from which he intended to sell firearms. *See* 18 U.S.C.A. § 923(d)(1)(E)(i) (West 2000) (stating that to be eligible to receive a license, a person must have "premises from which . . . he intends to conduct" his firearm-sales business). As support for his proposed limitation, Fattahi cites the doctrine that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The basis for this rule is that if a reviewing court were to affirm an administrative action on a ground not relied on by the agency, the court "would propel [itself] into the domain which Congress has set aside exclusively for the administrative agency." *Id.* This doctrine does not apply here, however, because we are not reviewing an agency decision, but instead, are determining whether an agency employee violated the Privacy Act. And, by looking beyond Angelo's theory of why the condominium bylaws were pertinent to Fattahi's suitability for an FFL, we are not making a judgment that Congress intended ATF to make. Thus, we reject the notion that Angelo's subjective analysis of why the bylaws were pertinent constrains our review.

### B.

Fattahi also maintains that even if the condominium bylaws were pertinent to his suitability to receive an FFL, Angelo's disclosure was not "necessary" because there were several actions Angelo could have taken that could have allowed him to avoid disclosing the identity of the FFL applicant he was investigating. Fattahi's arguments require us to determine the meaning of "necessary" in this context. In this regard, Fattahi points us to Congress' statement of the purpose of the Privacy Act. In particular, he refers us to the congressional finding that "the right to privacy is a personal and fundamental right protected by the Constitution" and to Congress' statement that agencies should "permit exemptions from the requirements with respect to records provided in [the Privacy] Act only in those cases where there is an important public policy need for such exemption as has been deter-

mined by specific statutory authority." 5 U.S.C.A. § 552a note (internal quotation marks omitted). Based on these pronouncements, Fattahi urges that "necessary" be construed strictly to mean "absolutely necessary." ATF, on the other hand, asserts that "necessary" means "reasonably necessary." We agree with ATF.

Initially, we note that the routine use provision appears in a Privacy Act subsection separate from those addressing the granting of "exemptions" from the general rules. *See* 5 U.S.C.A. § 552a(j), (k). Thus, it appears that Congress envisioned routine-use disclosures as complying with the general rules rather than being exempt from those rules. In any event, we have no reason to doubt that the need to efficiently determine whether applicants are suitable to receive permits is an important policy need. Indeed, Congress underscored the need for efficiency by requiring that ATF grant or deny FFL applications within 60 days. *See* 18 U.S.C.A. § 923(d)(2) (West 2000).

Additionally, as the district court correctly recognized, courts have held that "necessary" need not mean *absolutely* necessary. *See, e.g.*, *NLRB v. United States Postal Serv.*, 128 F.3d 280, 283 (5th Cir. 1997) (stating that "the inquiry into whether the records were 'needed' for purposes of [a particular routine use] is similar to the inquiry for determining whether records are 'relevant'"); *see also Price v. Johnston*, 334 U.S. 266, 278-79 (1948) (holding that statutory authorization of writs "necessary" for the exercise of jurisdiction does not require that use of the writ be essential, but only that it be reasonably necessary in the interest of justice (internal quotation marks omitted)); *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990) (holding that a "necessary" witness within the meaning of the criminal subpoena rule is one who is "relevant, material and useful to an adequate defense"); *Federal Labor Relations Auth. v. United States Dep't of the Treasury*, 884 F.2d 1446, 1449-50 (D.C. Cir. 1989) (explaining that "[n]ecessity is a matter of degree, and in many contexts courts have found a statutory requirement of necessity satisfied even when alternative means were feasible"); *Int'l Trading Co. v. Comm'r*, 275 F.2d 578, 585 (7th Cir. 1960) (holding that "necessary" business expenses under income tax statute are those expenses that are "appropriate and helpful" to the business (internal quotation marks omitted)). Especially in light of the tight time constraints to which ATF is subject, we agree with the district court that ATF's routine use must

be given "a practical reading" such that disclosures are in accordance with the routine use when they are "*reasonably* necessary to verify pertinent information, [and] not just [when] verification *cannot conceivably* be obtained by any other means." *Fattahi I*, 186 F. Supp. 2d at 663.

### 1.

Having identified the standard to be applied, we now turn to Fattahi's arguments that the disclosure of his identity was not necessary. Fattahi first argues that the disclosure was not necessary because the condominium bylaws themselves would have sufficiently demonstrated that Fattahi's operation of a firearms business from his residential unit was prohibited. The record refutes this assertion. When Angelo spoke with the association's counsel, he was informed that the condominium bylaws would *generally* prohibit operation of a firearms business. He was also told, however, that special exceptions could be granted by the condominium board to individual units and therefore that disclosure of the FFL applicant's unit number was necessary to determine whether that unit had received special permission.

### 2.

Fattahi also contends that Angelo could have asked him, rather than the association's counsel, whether the bylaws would preclude Fattahi from operating a firearms business in his residential unit. Fattahi further maintains that Angelo could also have inquired whether, in light of the bylaws, Fattahi would like to withdraw or amend his application, thereby obviating the need for further investigation or disclosure. The record reflects, however, that Atkins and Angelo had both already spoken to Fattahi concerning condominium restrictions prior to Angelo's discussing the matter with the association's counsel, and that Fattahi took the position that any condominium restrictions were not pertinent to his suitability for a license. Thus, Angelo had no reason to believe that further discussion with Fattahi would be productive.

### 3.

Finally, Fattahi argues that had Angelo made the appropriate investigation, he would have discovered that the condominium bylaws had not been properly recorded, and therefore, lacked the force of state law. *See* Va. Code Ann. § 55-79.53(A) (stating that "every unit owner . . . shall comply with . . . all provisions of the condominium instruments"); Va. Code Ann. § 55-79-41 (defining "condominium instruments" to include "bylaws . . . recorded pursuant to the provisions of this chapter"). Assuming *arguendo* that an investigation into, and a legal analysis regarding, the propriety of the recording of the bylaws would have led ATF to that conclusion, we hold that ATF was not required to pursue that line of inquiry. As the district court recognized, "condominium bylaws generally are valid and binding legal documents in Virginia, and it would be unreasonable to require an investigating ATF agent in every instance to make a legal determination concerning whether technical recording requirements have been met." *Fattahi II*, 195 F. Supp. 2d at 749.[3]

For all of these reasons, we hold that the district court properly concluded that the disclosure here satisfied the routine use exception to the Privacy Act disclosure provision.

### III.

In sum, we affirm the district court order granting summary judgment to ATF.

*AFFIRMED*

---

[3]Fattahi also maintains that even properly recorded condominium bylaws are not "state law" within the meaning of the licensing requirements because, although Virginia law compels unit owners to comply with properly recorded bylaws, those bylaws may be enforced by private action only. Even assuming that Fattahi is correct that bylaws may only be privately enforced, the federal licensing statute makes no distinction between state laws that may be publicly enforced and those that may not.